(C. D. 1050)

ASIATIC PETROLEUM CORP. *v.* UNITED STATES

## United States Customs Court, Third Division

(Decided April 2, 1947)

*Sharretts & Hillis* (*Joseph Schwartz* of counsel) for the plaintiff.

Paul P. Rao, Assistant Attorney General (*William J. Vitale,* special attorney), for the defendant.

Before CLINE and EKWALL, Judges

EKWALL, Judge: This action involves the levy of one-fourth of 1 cent per gallon internal revenue tax in accordance with the provisions of section 601 (c) (4) of title IV of the Revenue Act of 1932 (sec. 3422, Internal Revenue Code), as amended by the trade agreement with Venezuela, T. D. 50015, upon 220,930 gallons of fuel oil, withdrawn from manufacturing warehouse for use as fuel supplies on the steamship *Panamanian*, a vessel claimed to be engaged in foreign trade within the meaning of section 309 (a) of title III of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, and section 630 of title IV of the Revenue Act of 1932, as amended by the Revenue Act of 1938. It is provided in said section 309 (a) that withdrawals of supplies for vessels or articles sold for use as fuel supplies may be made from bonded warehouses free of duty or internal revenue tax under such regulations as the Secretary of the Treasury may prescribe. The plaintiff claims that no tax should have been assessed upon the fuel oil in question inasmuch as all regulations were complied with except such as transcend the requirements of the statutes and were unreasonable and void.

At the trial the collector's answer to protest was admitted in evidence and it was agreed between counsel as to the following facts:

(1) On March 12, 1940, the Asiatic Petroleum Corp. withdrew from bonded warehouse 220,930 gallons of fuel oil under withdrawal entry VS–12537 for use as supplies on the Panamanian steamship *Panamanian*, a vessel actually engaged in foreign trade. (2) In making such withdrawal, the provisions of articles 466 and 467, Customs Regulations of 1937, were complied with and said fuel oil was actually laden on board the steamship *Panamanian*. (3) The provisions of article 470, Customs Regulations of 1937, were not complied with.

The collector states that the fuel oil in question would be free from tax if the parties in interest had conformed to the regulations.

Section 309 of the Tariff Act of 1930, as amended by the Customs Administrative Act of June 25, 1938, appears as section 1309 in Title 19, United States Code, as follows:

§ 1309. **Supplies for certain vessels and aircraft—Exemption from customs duties and internal-revenue tax.—**

(a) *Articles of foreign or domestic manufacture or production may, under such regulations as the Secretary of the Treasury may prescribe, be withdrawn from bonded warehouses, bonded manufacturing warehouses,* or continuous customs custody elsewhere than in a bonded warehouse *free of duty or internal-revenue tax for supplies* (not including equipment) of vessels of war, in ports of the United States, of any nation which may reciprocate such privilege toward the vessels of war of the United States in its ports, or for supplies (not including equipment) *of vessels* employed in the fisheries or in the whaling business, or *actually engaged in foreign trade* or trade between the Atlantic and Pacific ports of the United States or between the United States and any of its possessions, or for supplies (not including equipment) of aircraft registered in the United States and actually engaged in foreign trade or trade between the United States and any of its possessions, or for supplies (including equipment), maintenance, or repair of aircraft registered in any foreign country and actually engaged in foreign trade or trade between the United States and any of its possessions, where such trade by foreign aircraft is permitted.

**Drawback**

(b) *Articles withdrawn from bonded warehouses, bonded manufacturing warehouses,* or continuous customs custody elsewhere than in a bonded warehouse and articles of domestic manufacture or production, *laden as supplies upon any such foreign vessel* or any such vessel or aircraft of the United States or laden as supplies (including equipment) upon, or used in the maintenance of repair of, any such foreign aircraft, *shall be considered to be exported within the meaning of the drawback provisions of this chapter.*

**Articles removed in, or returned to, the United States**

(c) *Any article exempted from duty or tax,* or in respect of which drawback has been allowed, *under this section* or section 1317 of this title *and thereafter removed in the United States from any vessel* or aircraft, *or otherwise returned to the United States, shall be treated as an importation from a foreign country.*

\*        \*        \*        \*        \*        \*        \*

[Italics supplied.]

The articles of the Customs Regulations of 1937, with which the plaintiff complied, provide as follows:

Art. 466 [as amended by T. D. 49658]. **Form of withdrawal—Bond.—**(a) Withdrawals shall be made on customs Form 7506.

(b) If the withdrawal is made by other than the principal on the warehouse or rewarehouse entry, as the case may be, the assent of such principal shall be indorsed on the withdrawal, unless the principal has, in writing, otherwise authorized such withdrawal.

(c) A bond on customs Form 7561 shall be taken when the withdrawal is made by a person other than the principal on the warehouse or rewarehouse entry, as the case may be, except where the vessel departs from the port of withdrawal directly for a foreign port.

(d) When the merchandise is not to be laden at the port of withdrawal it must be withdrawn for transportation in bond to the port of lading. Three copies of manifest, customs Form 7512, in addition to six copies of the withdrawal on customs Form 7506 will be required. The procedure will be the same as that

prescribed in article 900 (b) (the six copies of customs Form 7506 taking the place of the entry copies of customs Form 7512), except that no shipper's export declaration, customs Form 7525, will be required.

(e) No bond shall be required in the case of war vessels.

(f) When articles are exported from continuous customs custody elsewhere than in a bonded warehouse, the procedure provided for in article 910 shall be followed. There shall be such examination of the articles as may be necessary to satisfy the collector that they are subject to the privileges of section 309, Tariff Act of 1930, and that the value and quantity declared for them are correct.·

Art. 467. Delivery permit—Lading.—(a) Upon the filing of the withdrawal and the execution of the bond, when required, the collector shall issue a permit on customs Form 7506–A.

(b) A copy of the withdrawal will be transmitted to the surveyor or inspector acting as such, who shall designate a customs officer to supervise the lading of the merchandise and make a return thereof.

(c) Except where the vessel departs from the port at which the withdrawal is made direct for a foreign port, the merchandise shall be entered on the store list of the vessel on which laden, which fact shall be certified by the marine clerk or officer acting as such on the withdrawal.

The customs regulation with which the plaintiff failed to comply reads as follows:

Art. 470. Cancelation of bonds.—An affidavit of the master or other officer of the vessel having knowledge of the facts, showing that such supplies have been used on board the vessel and no portion thereof landed within the limits of the United States or any of its possessions, must be produced within six months from the date of the withdrawal to cancel the bond provided for in article 466 (c). The six-months' period may be extended as provided in article 1269. Such an affidavit must likewise be produced when the withdrawal is made by the principal on the warehouse or rewarehouse entry bond to secure credit on such bond for the free withdrawal, except where the vessel departs from the port of withdrawal directly for a foreign port.

Here the fuel oil in question was originally imported from the West Indies by the plaintiff and placed in its manufacturing warehouse. The entry was liquidated as subject to the imposition of the tax of one-fourth of 1 cent per gallon under the Internal Revenue Code, section 3422. Withdrawal permits were granted to lade the oil for use as fuel supplies upon a vessel engaged in foreign trade. The conditional exemption from the levy made of the tax of one-fourth of 1 cent per gallon was not granted because the plaintiff failed to comply with article 470 of the regulations, *supra*. The plaintiff claims these regulations are illegal because of a change in the law since they were promulgated and therefore alleges it is not compelled to comply with the same. The Government points out that although the law was changed by the elimination of the requirement that supplies so laden shall not be landed at any port or place in the United States or in any of its possessions, section 1309, *supra*, requires instead that such articles laden as supplies upon any such foreign vessel shall be considered to be exported within the meaning of the drawback provisions,

and any article exempted from the imposition of a tax and thereafter removed in the United States from any vessel, or otherwise returned to the United States, shall be treated as an importation from a foreign country.

If the withdrawn supplies are not used on board the vessel, obviously the conditionally free provision does not become operative and the oil thus remains the subject of tax. In case the supplies are landed in the United States, under the provisions of section 1309 (c), *supra*, they are to be treated as an importation. The landing thereof subjects them to the imposition of a tax. In our opinion, the regulation in question is valid in that it is a prerequisite to the collector's determination of whether or not the tax should be imposed, or, to put it in another way, whether the importation is entitled to exemption from tax under the statute. Fuel oil used as ships' supplies is exempt from taxes ordinarily imposed at the time of importation, provided regulations prescribed by the Secretary of the Treasury to insure such use have been complied with. Plaintiff's failure to comply with said article 470 deprives him of the privilege of exemption from tax.

Even were we to hold that article 470, *supra*, was unauthorized and enlarged the provisions of the statute, as contended by the plaintiff, the record is lacking in proof that this fuel oil was actually consumed on board the *Panamanian*, the vessel on which it was laden. It is clear that in any event plaintiff has failed to make out a *prima facie* case. *Thornley & Pitt et al.* v. *United States*, 19 C. C. P. A. (Customs) 221, T. D. 45325.

Judgment will be rendered in favor of the Government.